[S. F. No. 5889. Department One.—September 6, 1912.]

W. B. ANDERSON, Appellant, v. MARY A. P. QUICK, Administratrix of the Estate of J. W. Quick, Deceased, Substituted for J. W. Quick, Respondent.

BUILDING CONTRACT—PARTIAL DESTRUCTION OF BUILDING—INSTALLMENT PAYMENTS—LIABILITY OF OWNER—FAILURE OF PERFORMANCE BY CONTRACTOR.—If a building, while being erected under a contract calling for payments to the contractor in installments only when certain specified portions of the work had been done, is partially destroyed by earthquake and fire, and work thereafter is never resumed under the contract, the contractor, unless wrongfully prevented by the owner from further performance, has no claim against the owner for labor and materials furnished, for use in the building, except to the extent that payments therefor had become due under the terms of the contract.

ID.—CONSTRUCTION OF CONTRACT—PROVISIONS FOR APPORTIONMENT OF LOSS.—A provision in such contract that in case the work provided for should before completion be wholly destroyed by fire, defective soil, earthquake, or other act of God which the contractor could not have reasonably foreseen and provided for, "then the loss occasioned

thereby shall be sustained by the owner to the extent that he has paid installments thereon, or that may be due under the . . . contract; and the loss occasioned thereby and to be sustained by the contractor shall be for the uncompleted portion of said work upon which he may be engaged at the time of the loss, and for which no payment is yet due," and a provision immediately following that "in the event of a partial destruction of said work by any of the causes above named, then the loss to be sustained by the owner shall be in the proportion that the amounts of installments paid or due bears to the total amount of work done and materials furnished, estimated according to said contract price, and the balance of said loss to be sustained by the contractor," should be construed together, for the purpose of determining the meaning of the latter provision.

ID.—APPORTIONTMENT OF LOSS WHEN BUILDING PARTIALLY DESTROYED—ADJUSTMENT OF LOSS NOT CONDITION TO RESUMPTION OF WORK.—So construed, the provision for the apportionment of the loss in the event of a partial destruction of the building, did not make it incumbent upon the parties, before further work could proceed, to meet and agree upon the extent of the injury to the building and the loss occasioned thereby.

ID.—INSURANCE BY OWNER—CONTRACTOR NOT TO SHARE IN.—After the happening of such a partial destruction, the contractor is not entitled to share in the proceeds of any insurance on the building taken out by the owner on his interest therein.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. Thomas J. Lennon, Judge presiding at trial. J. J. Van Nostrand, Judge denying new trial.

The facts are stated in the opinion of the court.

Ames & Manning, for Appellant.

Chas. W. Slack, for Respondent.

SLOSS, J.—On November 3, 1905, the parties entered into a contract whereby the plaintiff, as contractor, agreed to construct for the defendant, as owner, a seven-story brick building upon a lot fronting on Seventh Street, in the city and county of San Francisco. The contract price was $45,927, payable in installments, as the work progressed.

Construction was commenced and continued until April 18, 1906, when the earthquake and fire which occurred on that

day partially destroyed the work done and the materials furnished by plaintiff under the contract. There had then been paid to plaintiff the first installment, amounting to $3,049, No further payment had become due. Work was never thereafter resumed under the contract.

In this action, brought to recover damages, the plaintiff, after setting forth the provisions of the contract, alleged that he had, up to April 18, 1906, expended $14,694.55 for work and materials furnished; that after April 18, 1906, he was ready, able, and willing to proceed with the performance of his contract, but that defendant refused to permit him to so proceed, and prevented him from performing any of the work required to be performed by him under the terms of said contract. Damage in the sum of $14,694.55, together with the further sum of $6,500 for loss of profits, is alleged to have resulted. The answer denied all of these allegations except those relating to the making of the contract and its terms.

The court found that, in the performance of work under the contract, the plaintiff had expended $13,279.43. It found that, after the eighteenth day of April, 1908, the plaintiff was not ready, or able, or willing to proceed with the performance of the work or the furnishing of materials under the contract; that defendant did not refuse to permit him to proceed, nor did the defendant prevent the plaintiff from performing his contract. There is also a finding that plaintiff has not been damaged in any sum.

Judgment in favor of the defendant followed. Plaintiff appeals from the judgment and from an order denying his motion for a new trial.

In order to overthrow the judgment, the appellant attacks, as unsupported by the evidence, the findings that defendant did not refuse to permit him to proceed, and did not prevent him from performing. Unless this attack be well founded, the plaintiff obviously can have no right of recovery. The contract for the construction of the building provided that payments should be made only when specified portions of the work had been done. Inasmuch as the plaintiff had not performed to a point entitling him to receive more than the first payment (which he had in fact received), he could claim nothing additional without showing that the defendant had wrongfully prevented further performance.

On the issue of prevention the record unquestionably contains evidence sufficient to support the finding of the court, unless the appellant be right in the construction which he seeks to put upon section "Twelfth" of the contract. That paragraph reads as follows:—

"Twelfth.  In case said work herein provided for should before completion, be wholly destroyed by fire, defective soil, earthquake or other act of God which the contractor could not have reasonably foreseen and provided for, then the loss occasioned thereby shall be sustained by the owner to the extent that he has paid installments thereon, or that may be due under the fifth clause of this contract; and the loss occasioned thereby and to be sustained by the contractor, shall be for the uncompleted portion of said work upon which he may be engaged at the time of the loss, and for which no payment is yet due under said fifth clause of this contract.

"In the event of a partial destruction of said work by any of the causes above named, then the loss to be sustained by the owner shall be in the proportion that the amounts of installments paid or due bears to the total amount of work done and materials furnished, estimated according to said contract price, and the balance of said loss to be sustained by the contractor."

It appears that on July 24, 1906, the plaintiff addressed to the defendant a letter in which, after calling attention to the last paragraph of the section just quoted, he requested the defendant to fix a time before August 1, 1906, when he, the plaintiff, might meet the said defendant "and adjust the losses on this building, as provided in the foregoing paragraph of the contract." No time for such meeting was fixed by the defendant.

The contention of the appellant is that, under the second paragraph of section "Twelfth," it became incumbent upon the parties, before further work could proceed, to meet and agree upon the extent of the injury to the building and the loss occasioned thereby. Since plaintiff sought to bring about such meeting, and the defendant did not comply with his request to fix a time, the said defendant, it is argued, thereby made it impossible for the plaintiff to go on with the construction of the building. But the difficulty with this argument is that it requires us to read into the agreement a

provision which is not contained therein, either in express language or by necessary implication. The twelfth clause certainly does not declare in terms that the parties shall agree upon the amount of the loss to be borne by the owner and the contractor, respectively, in the event of a total or partial destruction of the work before completion. All that it does is to provide the basis upon which the loss shall be apportioned. It must be conceded that a term or condition, although not expressed in a contract, may be implied, but this will be done only where the implication is necessary in order to effect the purpose and intent of the agreement. We see no reason why a prior adjustment of the loss was necessary to enable the contractor to proceed. The plaintiff was at perfect liberty to go on without such adjustment. Upon reaching a point where a payment was due him, he could have demanded of the defendant such amount as he could show to be due under the contract.

The two paragraphs of section ''Twelfth,'' both relating to the subject of destruction of work done, are to be read together. It is not claimed that the first paragraph contemplates the adjustment of loss before proceeding, nor *a fortiori,* the payment by the owner to the contractor of the proportion of the loss chargeable to him. The owner is to *sustain* a part of the loss and this he does when, upon the restoration of the building to a point where an installment becomes due, he is required to make duplicate payment of an installment already paid, or due and unpaid before the loss. There is no necessity for interpolating into the first paragraph any condition requiring adjustment or payment of loss before proceeding, and the second paragraph contains nothing which would require or justify a different construction.

What we have said disposes of all the points made by appellant, with the exception of the suggestion that the result of the judgment appealed from is to make the defendant an actual gainer by reason of the partial destruction of the work. In so far as this conclusion rests upon the fact that the defendant collected insurance money, it may be said that this is a matter wholly between the defendant and the insurers, and in no way a concern of the plaintiff. The plaintiff could have protected his interest by insurance. Not having done so, he is

not entitled to share in the proceeds of the insurance taken out by the owner.

If defendant benefited by the salvage on the building, such benefit came to him solely because the plaintiff failed to go on with the performance of his contract. Furthermore, there was no issue on this point, and we cannot know whether, in fact, the loss which defendant may have sustained through plaintiff's failure to complete his contract did not exceed the supposed gain in salvage.

In any aspect, the plaintiff, having failed to establish the necessary allegation that performance by him was prevented by the act of the defendant, cannot recover.

The judgment and order denying a new trial are affirmed.

Shaw, J., and Angellotti, J., concurred.

Hearing in Bank denied.